THE BOSTON STORE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4216.   Promulgated August 2, 1927.

*Lawrence Lewis, Esq.*, for the petitioner.
*W. H. Lawder, Esq.*, for the respondent.

VAN FOSSAN: This proceeding is for the redetermination of a deficiency of $1,558.76 in income and profits taxes for the calendar year 1920. It is alleged that the Commissioner erred in denying petitioner affiliation with the Greeley Dry Goods Co., and in increasing its taxable income by the sum of $514.45. At the hearing the correct taxable net income was stipulated.

### FINDINGS OF FACT.

Petitioner is a Colorado corporation with principal offices at Colorado Springs. The officers were Clem Melancon, president; Julius C. Fischer, vice president; Floyd L. Kelsey, secretary-treasurer. These parties and Fischer Brothers Co. owned all of the stock.

In June, 1920, the Greeley Dry Goods Co. was incorporated with an authorized capital stock of 400 shares, par value $100 per share. The owners of the stock and the number of shares held by each from the respective dates of issue were:

| Date of issue | Stockholder | Number of shares |
|---|---|---|
| July 6, 1920—Certificate No. 1 | Clem Melancon | 1 |
| July 6, 1920—Certificate No. 2 | W. C. Brooks | 50 |
| July 6, 1920—Certificate No. 3 | Floyd L. Kelsey | 1 |
| July 6, 1920—Certificate No. 4 | The Boston Store | 98 |
| Sept. 8, 1920—Certificate No. 5 | The Boston Store | 100 |
| Oct. 12, 1920—Certificate No. 6 | The Boston Store | 68 |
| Oct. 26, 1920—Certificate No. 7 | W. C. Brooks | 82 |

The directors of the corporation were W. C. Brooks, Floyd L. Kelsey, and Clem Melancon, the last named being also the president. The company began actual operations October 26, 1920.

Prior to incorporation of the Greeley Company, petitioner, pursuant to a plan of expansion, secured W. C. Brooks as manager of the store it contemplated opening at Greeley, Colo. It was then decided to organize a new company in which Brooks should be permitted to purchase 132 shares of stock, and thereafter the Greeley Dry Goods Co. was incorporated. It was agreed orally that petitioner should have control of the general policy and operation of the business of the new company. Brooks agreed, also orally, to exercise no control over his stock and to authorize some officer of petitioner to vote the same, as and when necessary, until such stock was fully paid for, and, in the event he desired to dispose of his holdings, to first offer the same to petitioner.

The original issue of 150 shares of the Greeley Company stock was paid for in cash, by Brooks for his 50 shares and by petitioner for its 98 shares and for the two shares held by Melancon and Kelsey. The 82 additional shares issued to Brooks were paid for with the proceeds of a loan obtained from the Union National Bank of Greeley upon his note, endorsed by Melancon and Fischer. All stock issued to Brooks was endorsed in blank immediately upon issue and deposited either with the bank as collateral security for the loan or with petitioner and was in Brooks' possession only long enough to be so endorsed.

Petitioner and the Greeley Company dealt in the same class or character of merchandise and in most instances purchases were made in bulk for both stores and the shipment later divided. Practically all purchases, as well as all banking and credit arrangements, for both stores were made by Melancon, and all notes executed by the Greeley Company were endorsed by officers of petitioner. All purchases were either charged to or paid for by petitioner or the payment therefor guaranteed by it. The books of the Greeley Company were kept in the offices of petitioner. During the taxable year the Greeley Company made no profit.

In February, 1921, petitioner paid Brooks' note to the Union Bank, repaid to Brooks his $5,000 original investment, and took over all his stock in the Greeley Company. During his ownership thereof Brooks exercised no control over his stock and no occasion arose necessitating his authorization to officers of petitioner to vote the same. Brooks did not participate in determining the policies of the company, but merely executed the orders given to him by petitioner.

The petitioner and Greeley Dry Goods Co. were affiliated in the year 1920.

The correct taxable net income of petitioner for the year 1920 was $10,285.62.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE, MILLIKEN, and PHILLIPS.